BLAKE G. HALL, ESQ.
SAM L. ANGELL, ESQ.
HALL ANGELL & ASSOCIATES, LLP
1075 S Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Telephone (208) 522-3003
Fax (208) 621-3008
*ISB Nos. 2434 and 7012*
bgh@hasattorneys.com
sla@hasattorneys.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RODNEY BURCH,<br><br>          Plaintiff,<br><br>v.<br><br>CITY OF CHUBBUCK, a political subdivision of the State of Idaho; and KEVIN B. ENGLAND, in his individual and official capacity,<br><br>          Defendants. | Case No. 4:22-cv-00366-AKB<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

COME NOW Defendants, CITY OF CHUBBUCK and KEVIN B. ENGLAND, by and through counsel of record, HALL ANGELL & ASSOCIATES, LLP, and hereby submit their Memorandum in Support of their Motion for Summary Judgment as follows:

**<u>INTRODUCTION</u>**

Plaintiff Rodney Burch is the former public works director for the City of Chubbuck, who voluntarily resigned his position on March 3, 2022. After his resignation, Plaintiff hired counsel and filed this lawsuit against the City of Chubbuck and Mayor England alleging that he was

actually "constructively discharged" from his employment because he supported Mayor England's opponent during the mayoral race in November of 2021. During the summer of 2021, in the months prior to the mayoral race, Plaintiff openly advocated for the City of Chubbuck to pivot to a "city administrator" form of government because Plaintiff did not think that Mayor England (his direct supervisor) was doing the job well enough. Plaintiff even went so far as to send a scathing written critique of Mayor England's job performance directly to Mayor England. Unsurprisingly, when Mayor England prevailed in the November 2021 election there was tension between Plaintiff and Mayor England, which included a discussion in the days after the election of whether Plaintiff should resign his employment. Plaintiff declined to resign at that time, and Mayor England convened an executive session to discuss whether the city council should consider voting to discontinue Plaintiff's appointment as public works director. The city council decided to retain Plaintiff as public works director and directed Plaintiff and Mayor England to continue to work together despite their differences.

In the end, Plaintiff did not suffer any adverse employment action. His employment was not terminated, he was not placed on administrative leave, his pay was not reduced, and he continued to work in his capacity as public works director until he voluntarily resigned his employment on March 3, 2022. As a throw-in for this lawsuit, Plaintiff has also asserted a claim against the city for allegedly violating the Idaho Protection of Public Employees Act ("IPPEA"), Idaho Code § 6-2101 *et. seq.* However, the only factual allegation Plaintiff has put forward to support this claim is that he allegedly reported issues with assignment of duties and compensation between city employees back in 2018, and the city was "wasteful" in not correcting that problem. As this suit was not filed until August of 2022, the statute of limitations had long since passed on any such allegation of waste. In sum, this suit is nothing more than Plaintiff's attempt to get back

at Mayor England for refusing to adopt Plaintiff's proposals regarding changes to the City's form of government. Plaintiff wants to turn a policy dispute that he lost into a claim that his civil rights were violated. Defendants' motion for summary judgment should be granted and Plaintiff's Complaint should be dismissed in its entirety.

## LEGAL STANDARD

In considering a motion for summary judgment, the Court may properly grant the motion when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(a). The question for the district court is "whether, viewing the facts in the non-moving party's favor, summary judgment for the moving party is appropriate. *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017), *citing Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1207 (9th Cir. 2016). "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Id*. "There is no genuine issue for trial" when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009).

## ARGUMENT

## I.    PLAINTIFF HAS FAILED TO MEET THE ELEMENTS OF CONSTRUCTIVE DISCHARGE.

Plaintiff cannot establish that he was constructively discharged from his employment. "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Poland v. Chertoff*, 494 F.3d 1174,

1184 (9th Cir. 2007); citing *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004). "The district court concluded that a reasonable person in Poland's position would have felt compelled to retire 'because the reassignment to Virginia resulted in separation from his family and demotion to a nonsupervisory position.'" *Poland*, 494 F.3d at 1184.

> The *Poland* court also noted:
>
> However, this evidence of transfer and demotion is insufficient, as a matter of law, to establish a constructive discharge. Instead, we have held that a
>
>> constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.
>>
>> *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir.2000) (internal quotation marks omitted).
>
> We set the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable.

*Id.; citing Thorne v. City of El Segundo*, 802 F.2d 1131, 1134 (9th Cir.1986); see also 93 F.3d 490, 494 (8th Cir.1996) ("An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged.").

Plaintiff claims that the mayor took away some of his duties. However, while he was employed with the City, Plaintiff provided Mayor England with a list that "represents what typical public works director roles and departments would be in similar cities. It addresses additional roles that historically have existed in Chubbuck. And then it lists other obligations that I was currently fulfilling." *Deposition of Rodney* Burch, 138: 23 – 139:3; *Declaration of Kevin B. England*, Exhibit I. Plaintiff testified that he provided Mayor England with this list "[t]o have him please help me manage some of these items." *Deposition of Rodney Burch*, 139: 9-12. Mayor England did reassign

some of Plaintiff's duties, but he did so because Plaintiff made this request. *Declaration of Kevin B. England*, ¶7. Plaintiff has not put any evidence into the record that his working conditions had become so intolerable that he felt compelled to resign. Plaintiff never testified that he brought any of the concerns about Mayor England allegedly taking away his duties to Mayor England's attention and therefore Plaintiff voluntarily resigned without giving Mayor England a reasonable chance to work out the problem. Therefore, Defendants are entitled to summary judgment on both counts in Plaintiff's Complaint to the extent that Plaintiff relies on constructive discharge as a theory to support his claims that he experienced adverse action.

## II.    PLAINTIFF HAS FAILED TO ESTABLISH THE ELEMENTS OF A CLAIM OF FIRST AMENDMENT RETALIATION.

Plaintiff voluntarily resigned his employment on March 3, 2022, therefore, he cannot create an issue of fact on any retaliation claim, and Count I must be dismissed. There is no dispute that Plaintiff was a public employee at all times relevant to this lawsuit. Because Plaintiff was a public employee, his claim for First Amendment retaliation is governed by the five-step inquiry laid out by the Ninth Circuit in *Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir.2009).

First, a plaintiff must show that "the speech addressed an issue of public concern." *Eng*, 552 at 1070. Next, the plaintiff must demonstrate that "the speech was spoken in the capacity of a private citizen and not a public employee." *Id*. at 1071. Third, a plaintiff must show that the government employer "took adverse employment action ... [and that the] speech was a 'substantial or motivating' factor in the adverse action." *Id*. at 1071; *citing Freitag v. Ayers,* 468 F.3d 528, 544 (9th Cir.2006). Once the plaintiff has established all three of these requirements, the government must then demonstrate that its "legitimate administrative interests outweigh the employee's First Amendment rights." *Eng*, 552 F.3d at 1071; *citing Thomas v. City of Beaverton,* 379 F.3d 802, 808 (9th Cir.2004). Should the government be unable to make this demonstration, it can instead

demonstrate that the government entity "would have reached the same [adverse employment] decision even in the absence of the [employee's] protected conduct." *Eng*, 552 F.3d at 1072; *citing Thomas,* 379 F.3d at 808.

A public employee's rights are protected by the First Amendment as long as that employee is speaking "as a citizen on a matter of public concern." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013); *citing Anthoine v. N. Cent. Counties Consortium,* 605 F.3d 740, 748 (9th Cir.2010). However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Ellins*, 710 F.3d at 1056; *citing Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006).

### a. The city did not take any adverse employment action against Plaintiff, as such, his claim for retaliation must fail.

Plaintiff cannot establish that Defendants took any adverse employment action against him. Plaintiff was an appointed official under Idaho law and was at-will under Chubbuck policy. Plaintiff was not fired, demoted, and did not have his pay altered. *Declaration of Kevin B. England*, ¶ 6. Because Plaintiff was an appointed official, Mayor England did not have authority to remove Plaintiff from his position. I.C. §50-206. Only the City Council had authority to remove Plaintiff upon a majority vote of the Council. I.C. §50-206. Therefore, any allegation that the Mayor attempted to seek Plaintiff's dismissal is a red herring, as the Mayor did not have authority to carry that threat out. The Ninth Circuit, in *Coszalter*, laid out guidelines for determining what constitutes "adverse employment action," which is any action that is "reasonably likely to deter [plaintiffs] from engaging in protected activity [under the First Amendment]." *Coszalter*, 320 F.3d at 976.

The *Coszalter* court also elaborated on the ways in which a plaintiff can show that speech was a "substantial or motivating factor" behind an adverse employment action:

> First, a plaintiff can introduce evidence regarding the 'proximity in time between the protected action and the allegedly retaliatory employment decision,' from which a 'jury logically could infer[that the plaintiff] was terminated in retaliation for his speech.' Second, a plaintiff can introduce evidence that 'his employer expressed opposition to his speech, either to him or to others.' Third, the plaintiff can introduce evidence that 'his employer's proffered explanations for the adverse employment action were false and pre-textual.'

*Coszalter*, 320 F.3d at 976; *citing Keyser v. Sacramento City Unified School District,* 265 F.3d 741 (9th Cir.2001).

Plaintiff alleges that there were essentially two adverse actions taken against him: first, when Defendant England allegedly attempted to get Plaintiff to resign, and second, when Plaintiff's duties were allegedly taken away following his second meeting with Defendant England on or around November 12, 2021. *Complaint*, ¶¶ 35-37. Defendants deny that Mayor England asked for Plaintiff's resignation. *Deposition of Kevin B. England*, 46: 21-22. However, even if the Court views the facts in the light most favorable to Plaintiff, there is no genuine dispute of fact regarding Plaintiff's allegations of adverse employment action.

Plaintiff cannot establish that Defendants took adverse action against him and cannot establish that his speech was a "substantial or motivating factor" in any alleged action. Plaintiff testified that he never spoke to Defendant England about either the sign or his support of Councilman Heiner. *Deposition of Rodney Burch*, 99:19-100:7. Defendant England learned that Plaintiff had a sign in his yard from a supporter who lived near Plaintiff. *Deposition of Kevin B. England*, 24: 7 – 21. Defendant England never saw the sign and never discussed the election with Plaintiff. *Deposition of Kevin B. England*, 24:22-25:7.

Plaintiff testified that Defendant England did not mention the election during the November 5th meeting. *Deposition of Rodney Burch*, 105: 25 – 106:4. Plaintiff testified that he merely *believed* that the election was the reason that Defendant England sought his resignation:

> Q. As you sat there, did you believe that was part of the reason?
> A. Yes.
> Q. Why did you think that?
> A. I believe he knew who I supported and -- I don't know. I -- I couldn't -- *I don't know any other reason. It had to have been who I had politically supported.* There was no performance reason to seek resignation.

*Deposition of Rodney Burch*, 106: 5-13, italics added. This is insufficient to establish that his speech was a "substantial or motivating factor" in any alleged action.

Plaintiff cannot demonstrate that Defendant England "expressed opposition" to his yard sign or his support of Councilman Heiner because Plaintiff testified that he never discussed the election with Defendant England. *Deposition of Rodney Burch*, 99:19-100:7. Plaintiff also alleged that his duties were taken away. However, Defendant England testified he asked that Plaintiff not be involved in training for the department heads because "we had already had the discussion that Rodney was doing two and a half people's work and I had been asked to cut him some slack wherever he didn't need to be." *Deposition of Kevin B. England*, 69:2-5; *see also Declaration of Kevin B. England*, ¶ 7. Scott Gummersall testified that this was the only training that Plaintiff was no longer involved with following the election. *Deposition of Scott Gummersall*, 13: 13-19. Mr. Gummersall also testified that Plaintiff was not excluded from his ordinary meetings between November 2021 and March 2022. *Deposition of Scott Gummersall*, 20: 10-14. Melanie Evans did testify that Plaintiff "was being forced out," but also testified that her primary source for her information was Plaintiff and Plaintiff's assistant Kami Morrison and testified that she could not recall any specific conversations with other staff members about Plaintiff's being "forced out."

*Deposition of Melanie Evans*, 34:4- 37:20. Ms. Evans also testified that Mr. Gummersall could testify as to what was happening at the City, but Mr. Gummersall testified that Plaintiff was not being excluded from meetings. *Deposition of Melanie Evans*, 35: 16-19; *Deposition of Scott Gummersall*, 20: 10-14. Therefore, Ms. Evans' testimony is not sufficient to establish that Plaintiff was subject to any adverse employment actions and the Defendants are entitled to summary judgment on this issue.

Even assuming that Plaintiff can establish the existence of an "adverse employment action," Plaintiff cannot establish that Mayor England's reasons for the alleged "adverse employment action" were pretextual. Mayor England testified regarding what he believed was cause for Plaintiff's removal:

> Q. Can you give me some examples?
> A. His letter of options and process. In my opinion, that was over the top. We had a department head who was telling the mayor he would do what he wanted or he would be rid of him. And to me that was cause for removal. That was the main document that I handed to the city council.
> Q. Okay. A form of insubordination, if you will?
> A. Correct.

*Deposition of Kevin B. England*, 78: 25-79:9. Defendants have attached a copy of the "Options in Process" document to the *Declaration of Kevin B. England* as Exhibit A. The document is a clear criticism of Defendant England, including allegations of avoiding decision making, failing to provide goals and direction for the City, failing to be objective, and other accusations. Frankly, Defendant England was not required to put up with a department head who was levelling such accusations. There is no case law that would provide Plaintiff with the authority to make such criticisms of his supervisor and then escape any associated consequences. This is a clear case where the government's "legitimate administrative interests outweigh the employee's First Amendment

rights" and therefore the Defendants are entitled to summary judgment on this issue. *Eng*, 552 F.3d at 1071.

      **b.  Plaintiff's claimed "expression" of waste was not a matter of public concern and was not spoken in the capacity of a private citizen.**

Plaintiff cannot demonstrate that his claimed "expression" of waste was a matter of public concern. Speech involves "a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community." *Eng*, 552 F.3d at 1070; *citing Johnson v. Multnomah County, Or.,* 48 F.3d 420, 422 (9th Cir.1995). Speech that "deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Eng*, 552 F.3d at 1070; *citing Coszalter v. City of Salem,* 320 F.3d 968, 973 (9th Cir.2003). A determination of whether speech is a matter of public concern is made through analyzing "'the content, form, and context of a given statement, as revealed by the whole record.'" *Eng*, 552 F.3d at 1070; *citing Johnson*, 48 F.3d at 422.

In *Coszalter*, the Ninth Circuit held that the plaintiff's contacting the media to disclose an "ongoing sewage discharge," complaints to OSHA and to the DEQ, reporting of the sewage discharge to the defendants, and various statements to other newspapers about OSHA violations were all constitutionally protected speech. *Coszalter*, 320 F.3d at 974. Plaintiff's advocacy for a city administrator position is not similar to the constitutionally protected speech discussed in *Coszalter*. Plaintiff's advocacy of the city administrator position was a policy dispute between the mayor and a department head. This is speech that deals with "individual personnel disputes and grievances" and is not relevant to the "the public's evaluation of the performance of governmental agencies."

Plaintiff's stance on the City Administrator position was not spoken in Plaintiff's capacity as a private citizen. "Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" *Eng*, 552 F.3d at 1070; *citing Posey v. Lake Pend Oreille School Dist. No. 84,* 546 F.3d 1121, 1127 n. 2 (9th Cir.2008). Plaintiff stated in his April 19th 2021 letter to Mayor England that he had "already thought about this type of organizational structure and believe we can accomplish this goal with current staff." *Declaration of Kevin B. England in Support of Motion for Summary Judgment*, Exhibit H. Plaintiff clearly attempted to advocate for a city administrator in his role as the Public Works Director and not as a private citizen. This takes his advocacy out of the realm of protected speech and puts it into the realm of statements made pursuant to official duties, and therefore unprotected. Because Plaintiff cannot meet the first two factors of the *Eng* test, the Court must find that Plaintiff's claims of "waste" were not protected speech and dismiss Plaintiff's claim of First Amendment retaliation.

### c. Plaintiff's meeting with Defendant England did not constitute protected speech.

As for Plaintiff's meeting with Defendant England, that meeting constituted only speech dealing with "individual personnel disputes and grievances." On November 12, 2021, Plaintiff and Mayor England met a second time to discuss how they could continue to work together following the executive session. *Deposition of Kevin B. England*, 50: 19-25. On November 15, 2021, Plaintiff sent an email to Defendant England detailing some of the things that had been discussed in the meeting. Plaintiff "committed to you that I would cease further private conversations with Council related to your performance" and committed to speak to his subordinates "to express my future support of you as Mayor." *Declaration of Kevin B. England,* Exhibit G. This is not protected speech but is clearly a discussion between a superior and a subordinate on how to continue working

together. This is also speech made in the capacity of an employee and not a private citizen, and therefore is not protected. Defendants are entitled to summary judgment on this issue because Plaintiff cannot establish a genuine dispute of fact on whether this speech is protected.

      **c.  There is no genuine dispute of material fact on the question of whether the City or Mayor England took adverse employment action against Plaintiff for his letter of resignation.**

Plaintiff's letter of April 7, 2022, also did not constitute protected speech because no adverse action was taken against Plaintiff. Plaintiff's letter contained a number of grievances, including claims that he was retaliated against for supporting Councilman Heiner in the 2021 election and his claim that Defendant England took away his responsibilities as the Public Works Director. *Declaration of Kevin B. England*, Exhibit B. This letter is merely a list of "individual personnel disputes and grievances" which is not considered protected speech for First Amendment purposes. *Eng*, 552 F.3d at 1070.

Additionally, as a matter of law, Plaintiff's letter cannot constitute evidence of violation of his First Amendment rights because Plaintiff cannot establish that either Defendant England or the City took any adverse employment action against him as a result of the letter. Plaintiff submitted this letter on April 7, 2022. Plaintiff had already submitted a notice of resignation on March 3, 2022, which informed Defendant England and Scott Gummersall that his last day of work would be Friday, April 8, 2022. *Declaration of Kevin B. England*, Exhibit C. There is no evidence in the record of any claimed adverse employment action that was taken against Plaintiff between April 7, 2022, and April 8, 2022, and no evidence at all from Plaintiff that the April 7 letter was a "substantial or motivating" factor in any adverse employment action. The timing of the letter alone – coming only one day before Plaintiff's final day of work and after Plaintiff had already resigned – would indicate that no adverse action could have occurred. While the Ninth Circuit in *Coszalter*

indicated that "a specified time period cannot be a mechanically applied criterion," Plaintiff has failed to place any evidence into the record establishing a genuine dispute of material fact on the question of whether any adverse employment action was taken against him because of the April 7 letter and therefore any claim of First Amendment retaliation based on the letter must be dismissed. *Coszalter*, 320 F.3d at 977.

> **d. As a policymaking employee, Plaintiff was also subject to additional restrictions on his First Amendment rights.**

Even if the Court finds that the executive session to remove Plaintiff was a form of adverse action, Plaintiff's status as a policymaking employee means that there was no constitutional violation in any attempt to remove Plaintiff from his position. Because he was a policymaking public employee, Plaintiff was also subject to the First Amendment exceptions detailed in *Summers v. McCall*, 84 F.Supp.3d 1126, 1153 (D. Idaho Jan. 29, 2015). It is true that the First Amendment "protects a public employee from being fired or retaliated against based on his or her political opinions, memberships, or activities." *Summers*, 84 F.Supp.3d at 1153; *citing Hunt v. County of Orange,* 672 F.3d 606, 611 (9th Cir.2012). However, the United States Supreme Court "carved out an exception to this general prohibition in *Elrod,* permitting dismissals on the basis of political beliefs of those employees in 'policymaking positions' so that 'representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate.'" *Hunt*, 672 F.3d at 611; *citing Elrod v. Burns,* 427 U.S. 347, 367 (1976).

When making a determination on whether an employee is a "policymaker," the Court must look at "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Summers*, 84 F.Supp.3d

at 1153; *citing Hunt*, 672 F.3d at 611. The Ninth Circuit has created a list of "nonexclusive factors" for courts to consider, including: "vague or broad responsibilities, relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders." *Summers*, 84 F.Supp.3d at 1153; *citing Fazio v. City and Cnty. of San Francisco,* 125 F.3d 1328, 1334 n. 5 (9th Cir.1997).

In *Summers*, the district court held that the police chief in McCall, Idaho was a "policymaker" after examining the *Fazio* factors. The *Summers* court examined the city's organizational structure and held that "[t]he duties of the Police Chief involve, in large part, implementation of the policies and directives of the City Council and demand a certain level of allegiance and affiliation to the City Council as well as the City Manager." *Summers*, 84 F.Supp.3d at 1158. The Court also reviewed the job description for the chief of police, the chief's influence on programs, the chief's rate of pay, his ability to control others, his contact with elected officials, and his ability to represent the city. *Id.* at 1153-8. The sole *Fazio* factor that the *Summers* court weighed in the plaintiff's favor was whether he had authority to "speak in the name of policymakers" because the plaintiff contended that he was not permitted to represent the City after the defendant became the city manager. *Id.* at 1156.

A review of the *Fazio* factors in this case demonstrates that Plaintiff was a policymaker. Like the plaintiff in *Summers*, Plaintiff was a department head who was in charge of running his department, including setting the budget and controlling other employees. The City's organizational chart demonstrates that Plaintiff was subordinate only to the Mayor and was at the same level as other department heads, including the police chief and the fire chief. *Declaration of Kevin B. England,* Exhibit D. The most recent job description at the time that Plaintiff resigned

indicates that Plaintiff was responsible for "Department policies and procedures, long-term and short term plans, objectives, and operational guidelines" and "staff supervision and evaluation, training, budgeting, planning, organizing, coordinating, and directing Department activities." *Declaration of Kevin B. England,* Exhibit E. The description also provides that Plaintiff was responsible for representing the Department to the City Council and to "citizen groups, other government agencies, planning and engineering groups, and other committees, associations, and interest groups." *Declaration of Kevin B. England,* Exhibit E.

These excerpts from Plaintiff's job description cover nearly all of the *Fazio* factors, and as for the remaining factor, pay, Plaintiff's pay schedule indicates that Plaintiff was highly paid. *Declaration of Kevin B. England,* Exhibit F. Unlike the plaintiff in *Summers*, Plaintiff has not indicated that he was not permitted to represent the City, and so all of the *Fazio* factors weigh in favor of Plaintiff's having been a policymaker. The other major difference between *Summers* and this case is that Plaintiff was not dismissed from his position and therefore did not suffer any adverse action. Like the plaintiff in *Summers*, Plaintiff's duties involved implementation of Defendant England's and the City Council's directives and his position demanded "a certain level of allegiance and affiliation" to Defendant England as well as to the City Council. If Defendant England believed that Plaintiff was not demonstrating that allegiance and affiliation, Defendant England was well within his rights to request that the Council remove Plaintiff and such request would not have violated Plaintiff's constitutional rights. Therefore, even if this Court determines that Plaintiff suffered an adverse action, Defendants are entitled to summary judgment under the policymaker exception and Count I of Plaintiff's Complaint must be dismissed.

### III. PLAINTIFF HAS FAILED TO ESTABLISH THAT DEFENDANTS VIOLATED THE PROTECTION OF PUBLIC EMPLOYEES ACT.

#### a. Plaintiff has failed to establish that he communicated in good faith any waste or any violations of law, rules, or regulations.

Plaintiff made no written or verbal report of waste or a violation of law before he voluntarily resigned his employment on March 3, 2022. The purpose of the IPPEA is to "protect the integrity of government by providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation." I.C. 6-2101. The IPPEA prohibits an employer[2] from taking "adverse action" against an employee "because the employee, or a person authorized to act on behalf of the employee, communicates in good faith the existence of any waste of public funds, property or manpower, or a violation or suspected violation of a law, rule or regulation adopted under the law of this state, a political subdivision of this state or the United States." I.C. § 6-2104(1)(a). The communication "shall be made at a time and in a manner that gives the employer reasonable opportunity to correct the waste or violation" and "an employee communicates in good faith if there is a reasonable basis in fact for the communication." I.C. §§ 6-2104 (1)(a) and (b). There is no good faith "where the employee knew or reasonably ought to have known that the report is malicious, false or frivolous." I.C. § 6-2104 (1)(b).

A plaintiff alleging a violation of the IPPEA must "'establish, by a preponderance of the evidence, that the employee has suffered an adverse action because the employee, or a person acting on his behalf engaged or intended to engage in an activity protected under section 6–2104, Idaho Code.'" *Cryer v. Idaho Department of Labor*, 332 F.Supp.3d 1260, 1271 (D. Idaho Jul. 30,

---

[2] Defendants do not dispute that Defendant City of Chubbuck is an "employer" and that Plaintiff was an "employee" as the terms are defined in the IPPEA. *See* I.C. §§ 6-2103(3) and (4)(a).

2018), *citing Patterson v. State Dept. of Health & Welfare*, 151 Idaho 310 (2011). The federal district courts apply the *McDonnell Douglas* burden shifting analysis to IPPEA claims at the summary judgment stage. *Cryer*, 332 F.Supp.3d at 1271, *citing Brown v. City of Caldwell*, No. 1:10-CV-536-BLW, 2012 WL 892232 at *7 (D. Idaho Mar. 14, 2012). Under this analysis, "once the plaintiff establishes a prima facie case, the employer may produce evidence that it discharged the plaintiff for a legitimate, non-retaliatory reason.  If the employer meets this burden, the burden then shifts back to the plaintiff to prove that the legitimate non-discriminatory reason the employer proffered is, in fact, a pretext." *Cryer*, 332 F.Supp.3d at 1271, *citing Dawson v. Entek Intern.*, 630 F.3d 928, 934–935 (9th Cir. 2011).

A plaintiff may establish a *prima facie* case by showing: "(1) he was an employee who engaged or intended to engage in protected activity; (2) his employer took adverse action against him; and (3) the existence of a causal connection between the protected activity and the employer's adverse action." *Cryer*, 332 F.Supp.3d at 1271, *citing Van v. Portneuf Med. Cntr.*, 156 Idaho 696 (2014) ("*Van II* "). Plaintiff has failed to establish a *prima facie* case that he engaged in protected activity, that his employer took adverse action against him, or the existence of any causal connection between the protected activity and an alleged adverse action. The only allegation of "waste" reported to the City was how salaries were allocated between various City departments. However, that report was made in 2018, years before Plaintiff voluntarily resigned. *Deposition of Rodney Burch*, 172: 19. There is a six-month statute of limitations for IPPEA claims. I.C. § 6-2105(2).

Plaintiff testified that his proposal of a city administrator position was not a report of waste or misuse of funds:

Q. And you're saying, I think, here that your proposal to have a city manager appointed would also address this waste in manpower?
A. Yes. Absolutely.
Q. And so it's your belief that – in 2021, when you were proposing the appointment of a city administrator, do you believe that was you reporting waste in manpower then?
A. No.
Q. Okay. It had already been reported years earlier, if I'm tracking with you?
A. Right. And we – yes. And we set in place tools to help facilitate and mitigate that waste, yes.
Q. And so if I'm tracking with you, your proposal of the city administrator was basically another tool to try to mitigate that in 2021?
A. Yes.

*Deposition of Rodney Burch*, 174: 21-175:13.  Therefore, Plaintiff did not report any waste within the previous six months of his voluntary resignation. Plaintiff's claim is therefore outside the statute of limitations and Count II must be dismissed.

However, even if the Court were to hold that Plaintiff's action was filed within the statute of limitations, the actions that Plaintiff took did not constitute reporting of waste. Plaintiff testified that his proposal for a city administrator was not in fact a reporting of any waste of public funds or property of the City. *Deposition of Rodney Burch*, 174: 21-175:13. Plaintiff's proposal for a city administrator position was not itself reporting waste, but instead by Plaintiff's own admission was a potential means of remedying "waste" that had already been reported. The distinction here is important. The IPPEA prohibits employers from taking adverse action against an employee who "communicates in good faith the existence of any waste…" I.C. § 6-2104(1)(a). The IPPEA does not create any sort of mandate which forces employers to adopt a particular proposed means of remedying waste.

Plaintiff also testified that while the City Council did hold a meeting on the city administrator issue in July of 2021, he did not make any presentations to the City Council about waste:

Q. And then to the extent that you claim you were alleging waste, are there any council minutes that you're aware of, or any document that you are aware of, that was produced to council about waste?
A. No.

*Deposition of Rodney Burch*, 188: 14-19. The record simply does not establish that Plaintiff communicated the existence of waste in good faith. Plaintiff testified that Mayor England had been aware of the existence of Plaintiff's concerns about misallocation since 2018. *Deposition of Rodney Burch*, 172: 10-20. Plaintiff further testified that Mayor England did not request that Plaintiff solve this alleged problem, meaning that his proposal of a City administrator was entirely his own idea:

Q. And did the mayor direct you to be in charge of straightening that all out?
A. I don't think he told me to be in charge of it. When I shared it with him, he acknowledged that it's a concern and an issue and said, "Yeah, let's see what we can do to resolve that."

*Deposition of Rodney Burch*, 173: 4-9. Plaintiff has not shown that he communicated the existence of waste in good faith, merely that he proposed a remedy for a long-disclosed issue that the Mayor did not agree with. Therefore, he has not met the first requirement of the IPPEA and Defendants are entitled to summary judgment on Count II of Plaintiff's Complaint.

**b. Plaintiff has failed to establish that he had any adverse actions taken against him.**

Because Plaintiff has failed to establish that he communicated any waste or violations of law in good faith, there is no genuine dispute of material fact on this issue and the Court should grant summary judgment to Defendants. However, should the Court rule on the question of whether Plaintiff had adverse action taken against him, the Court must also find that no genuine dispute of fact exists. The term "adverse action" as used in the IPPEA means to "discharge, threaten or otherwise discriminate against an employee in any manner that affects the

employee's employment, including compensation, terms, conditions, location, rights, immunities, promotions or privileges." Idaho Code § 6-2103(1).

Plaintiff did not have any adverse actions taken against him. Plaintiff was never terminated from his position and continued as the City's Public Works Director until he voluntarily resigned in March of 2022, with his last day on April 8, 2022. *Declaration of Kevin B. England,* Exhibit C. Plaintiff further testified that his alleged reporting of "waste" in 2018 did not have anything to do with the claimed request from Defendant England that he resign:

> Q. Do you believe that the mayor's request for you to resign in November of 2021 had anything to do with this spreadsheet allocation that we've been talking about?
> A. I – I don't think so.

*Deposition of Rodney Burch*, 173: 25 – 174:4. Plaintiff himself testified that he believed that the request that he resign came because of his support of Councilman Heiner in the November 2021 election, not as a result of reporting any "waste". *Deposition of Rodney Burch*, 106: 5-13. Plaintiff did not testify that his advocacy of the city administrator position was the reason that Defendant England allegedly requested his resignation. Therefore, Plaintiff cannot demonstrate either the existence of an adverse action or the existence of a causal connection between the protected activity and the employer's adverse action and Defendants are entitled to summary judgment on Plaintiff's IPPEA claim because Plaintiff has not established his *prima facie* case.

## CONCLUSION

Based on the foregoing, Defendants Kevin B. England and City of Chubbuck respectfully request that this Court grant summary judgment in their favor, and that Plaintiff's Complaint be dismissed in its entirety.

//

//

DATED this 15th day of December, 2023.

_____
SAM L. ANGELL

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing document upon the following on December 15, 2023, by the method indicated below:

DeAnne Casperson, Esq.                    [X] ECF
Amanda Ulrich, Esq.
Ryan S. Dustin, Esq.
CASPERSON ULRICH DUSTIN
356 W Sunnyside Road, Ste B
Idaho Falls, ID 83402
Email: dcasperson@workandwage.com
Email: aulrich@workandwage.com
Email: rdustin@workandwage.com

_/S/_____
SAM L. ANGELL