BLAKE G. HALL, ESQ.
SAM L. ANGELL, ESQ.
HALL ANGELL & ASSOCIATES, LLP
1075 S Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Telephone (208) 522-3003
Fax (208) 621-3008
*ISB Nos. 2434 and 7012*
bgh@hasattorneys.com
sla@hasattorneys.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RODNEY BURCH,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF CHUBBUCK, a political subdivision of the State of Idaho; and KEVIN B. ENGLAND, in his individual and official capacity,<br><br>　　　　　　Defendants. | Case No. 4:22-cv-00366-AKB<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

COME NOW Defendants, CITY OF CHUBBUCK and KEVIN B. ENGLAND, by and through counsel of record, HALL ANGELL & ASSOCIATES, LLP, and hereby submit their Reply in Support of their Motion for Summary Judgment as follows:

**ARGUMENT**

In opposition to the motion for summary judgment, Plaintiff has attempted to twist and confuse the issues. Plaintiff argues that portions of his deposition create an issue of material fact which prevent summary judgment while also arguing at times that he was confused during his deposition and that Defendants cannot rely on statements he made to support their motion for

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT    1

summary judgment. Plaintiff also attempts to use hearsay statements from others to bolster his own argument. Those hearsay statements should be stricken as set forth below.

Ultimately, all of the claims alleged by Plaintiff rely on Plaintiff proving that he suffered an adverse employment action as a result of a protected activity. Plaintiff's argument to this vital element of his case is similarly confusing. Plaintiff at first claims that a request that he resign from Mayor England, who lacked the authority to fire Plaintiff or force him to resign, constitutes an adverse employment action. Plaintiff then also tries to argue that a reduction in his workload, which he personally requested, also constitutes an adverse employment action. As set forth at length below, Plaintiff simply cannot show that he suffered an adverse employment action. Because Plaintiff did not suffer an adverse employment action, his claims must be dismissed with prejudice.

**I.      MOTION TO STRIKE.**

As a preliminary matter, Defendants move this Court for an order to strike paragraphs 44 and 51 of Plaintiff's statement of facts (Dkt. 20-1). Those two paragraphs should be stricken as they contain inadmissible hearsay. Federal Rule of Civil Procedure 56(c)(2) states that "a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." F.R.C.P. 56(c)(2). Federal Rule of Evidence 801 defines hearsay as an out of court statement presented to prove the truth of the matter asserted. Rule 802 provides that hearsay is not admissible in Court.

In this case, Plaintiff presents two statements from Melanie Evans in his statement of facts in paragraphs 44 and 51. Paragraph 51 clearly contains a hearsay statement. Plaintiff cites to Ms. Evans' deposition in an attempt to introduce a statement from Kami Morrison. Plaintiff cites to Ms. Evans' deposition in an attempt to prove that he was being "ostracized and

excluded." (Dkt. 20-1 ¶ 51). Because the paragraph is clearly hearsay as it contains an out of court statement from Ms. Morrison presented through the deposition of Ms. Evans, it should be stricken.

Plaintiff also attempts to use Ms. Evans' deposition to prove that "Mayor England ostracized and sidelined Burch." (Dkt. 20-1 ¶ 44). While this statement may not appear on its face to contain hearsay, a review of the cited portions of the deposition of Ms. Evans makes it clear that this statement is hearsay.

Q. How did you know Rod was being left out of meetings?

A. He told me.

(Dkt. 20-4 p. 27:12–14). Plaintiff is essentially relying on Ms. Evans to introduce facts which she knows solely because he told her. This attempt to rely on Ms. Evans deposition to lend credibility to his own hearsay statements is not appropriate nor is it allowed under the Federal Rules of Evidence. As such, paragraphs 44 and 51 of the statement of facts should be stricken.

## II. PLAINTIFF HAS FAILED TO ESTABLISH A DISPUTE OF FACT ON HIS FIRST AMENDMENT CLAIM.

Plaintiff has failed to establish that he was constructively discharged from his employment or that he was retaliated against because of his political speech. As Defendants noted in their earlier memorandum, the question for constructive discharge is "[d]id working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007); citing *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004).

> The *Poland* court also gave the reason that constructive discharge is a "high standard:"
>
> We set the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than

when the employee walks away and then later litigates whether his employment situation was intolerable.

*Id.; citing Thorne v. City of El Segundo*, 802 F.2d 1131, 1134 (9th Cir.1986); see also 93 F.3d 490, 494 (8th Cir.1996) ("An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged."). Courts generally prefer not to act like a super-HR department evaluating staffing decisions. *McSparren v. Pennsylvania*, 289 F.Supp. 3d 616, 625 (M.D. Pennsylvania 2018) ("Plaintiff wants the court 'to act as a super-HR department-comparing qualifications; considering staffing decisions; evaluating the practive of employee movement throughout the agency; deciding whether arguments over budget priorities were justified; deciding whether going over her supervisor's head was appropriate; and the like.' ")

Plaintiff's sole evidence that he was constructively discharged when Mayor England took his duties away is an affidavit and a statement of facts filed with his response to summary judgment which are self-serving and do not accurately represent prior testimony given in this case. One of the more egregious errors is found in Plaintiff's Statement of Facts, in which Plaintiff claims that "On at least one occasion when Morrison directed Morgan back to Burch, Morgan told Morrison that if he was on team Rodney, "we're not going to do that." (Morrison Dep. pp. 7-10)." (Dkt. 20-1, ¶ 45). This phrase never appears in Mr. Morrison's testimony, as cited by Plaintiff, but comes instead from Plaintiff's deposition. Mr. Morrison testified that while he once heard Mr. Morgan use the phrase "team Rodney," he did not recall the exact context in which the term came up:

> Q. In the course of those discussions during that time period -- again, late 2021, early 2022 -- did Mr. Morgan say anything to you about being or not being on team Rodney?
>
> A. Yes. That comment had been made.

> Q. Can you tell me more about that comment and the context in which that came up?
>
> A. I don't recall much more than that. Just that it had been commented that -- I don't know how -- I just do recall the term "team Rodney" and whether or not I -- I guess if -- I don't know if it was directed at me or if it was directed at someone else.

*Deposition of Bridger Morrison*, 8:2-14.

Additionally, Mr. Morrison never testified that Mr. Morgan deliberately bypassed Plaintiff. Mr. Morrison testified that "[t]here were times where I was asked questions that I did not believe were my typical -- that fell within my typical role previously" but did not connect these unspecified questions to any directive from Mayor England to bypass Plaintiff. *Deposition of Bridger Morrison*, 7: 17-19. Mr. Morrison also testified that "I had discussions with Mr. Morgan regarding budgets. It was a normal function of my job." *Deposition of Bridger Morrison*, 6: 21-23. Contrary to Plaintiff's claim that Mr. Morgan did not communicate directly with the department heads under Plaintiff before the election in November of 2021, meetings with Mr. Morgan regarding budgets were part of Mr. Morrison's normal job duties as the Public Works Operations Manager. *Deposition of Rodney Burch, Deposition of Bridger Morrison*, 7: 1-3.

Plaintiff then attempts to cite to *Parrett v. City of Connersville, Indiana*, 737 F.2d 690 (1984), to support his claim that he was constructively discharged. Aside from not being binding precedent on this Court, *Parrett* is factually distinguishable from this case. In *Parrett*, the plaintiff was the chief detective of Connersville, Indiana. *Parrett*, 737 F.2d at 693. The plaintiff investigated the daughter of a prominent citizen for forgery of bank checks. *Id.* That citizen was later appointed to city attorney and immediately demanded that the plaintiff resign as chief of detectives. *Id.* When the plaintiff refused to resign, he was removed as chief of detectives and

transferred to the uniformed force as "line captain." The Seventh Circuit described the reassignment as follows:

> [T]he new police chief. . . acting on instructions from Cordes, told Parrett that he would not be assigned any police duties as "line captain." He was given a windowless room to sit in that formerly had been a storage closet. The room had a desk and chair but no other furniture. Parrett spent his shift sitting at the desk with nothing to do. The enforced idleness got on his nerves in a most serious way. He was hospitalized with symptoms of nervous collapse that included cardiac abnormalities.

*Id.* The Court also noted that the plaintiff had specifically asked to be placed on patrol or given anything at all to do, and the defendants refused, instructing him to simply sit in the room and collect his paycheck. *See id.*

The facts of Plaintiff's employment in this case are far from those of *Parrett*. Unlike the plaintiff in *Parrett*, the Plaintiff in this case went to Mayor England, complaining that he was overworked, and asked for a reduction in his job duties. Plaintiff claimed that he was "fulfilling about two and a half FTE jobs. . . ." (Deposition of Rodney Burch 136:18–19). Indeed, had the City not shifted some duties away from Plaintiff, he would likely argue that he was constructively discharged when the City forced him to work 2.5 FTE jobs.

In response to Plaintiff's direct request to have his workload reduced, the City worked to relieve the stress of Plaintiff's job. However, unlike the plaintiff in *Parrett*, the City did not simply sit Plaintiff in a windowless room without a phone and with absolutely nothing to do driving him to have cardiac abnormalities. By Plaintiff's own admission, he still had "0.7 or 0.8" FTE at the time of his resignation in March of 2022. (Burch Depo. 140:24–141:2). Additionally, unlike the Plaintiff in *Parrett*, prior to his resignation, Plaintiff never requested additional duties or tasks.

Plaintiff's reliance on *Parrett* is misplaced. If anything, *Parrett* shows that Plaintiff was not constructively discharged. In *Parrett*, the conditions created for the plaintiff were so bad that the plaintiff was ultimately hospitalized and had to be medically retired. The Plaintiff in this case continued to work for four months before ultimately deciding to resign. During that time, Plaintiff did not express any concern regarding the amount of work he was doing and never asked for additional tasks. Plaintiff has failed to produce any evidence that the City or Mayor England forced him out of his job. Because Plaintiff has failed to present any evidence which would support a finding that Plaintiff was constructively discharged or subject to any other adverse employment action, Plaintiff's claims should be dismissed with prejudice.

### III. PLAINTIFF HAS FAILED TO ESTABLISH THE EXISTENCE OF A DISPUTE OF FACT REGARDING HIS IPPEA CLAIM.

Plaintiff has failed to meet the elements of his *prima facie* case under the Idaho Protection of Public Employees Act (IPPEA). As Plaintiff acknowledges, he is required to prove "(1) he was an employee who engaged or intended to engage in protected activity; (2) his employer took adverse action against him; and (3) the existence of a causal connection between the protected activity and the employer's adverse action." *Cryer v. Idaho Department of Labor*, 332 F.Supp.3d 1260, 1271 (D. Idaho Jul. 30, 2018), citing *Van v. Portneuf Med. Cntr.*, 156 Idaho 696 (2014) ("Van II"). Plaintiff has failed to establish a genuine dispute of material fact on any of these elements.

With regard to the first element, it is not, as Plaintiff claimed, a "distinction without a difference" to point out that the IPPEA protects only the reporting of waste and not any advocated means of remedial action. Plaintiff testified that he had the conversation with Mayor England in 2018 regarding an allegation of waste related to salary allocation. Besides that 2018 conversation, no other "waste" was reported by Plaintiff. By his own admission, Plaintiff's

advocacy for a City Administrator was not a report of waste. (Burch Depo. 174:21–175:13). While Plaintiff now claims to have been confused when he made this admission under oath during his deposition, he made no such indication that he was confused when he made that admission during the deposition. Further, Plaintiff worked for years without incident at the City after he allegedly reported waste in 2018, and with no allegation of any retaliation. It was only after he got crosswise with the Mayor over political differences in 2021 that the relationship soured. As such, since 2018, Plaintiff cannot show any evidence which would show that he reported waste.

Additionally, Plaintiff cannot establish that any adverse action was taken against him. *Eller* does not help Plaintiff's position. None of the things listed in *Eller* occurred in Plaintiff's employment. Plaintiff was not demoted or downgraded. Plaintiff's work hours were not changed, and Plaintiff was not constructively discharged. As Mr. Gummersall and Mayor England both testified, Plaintiff was not excluded from meetings and the only training that was reassigned was done so at Plaintiff's request. In general, Plaintiff remained as the public works director and held all of the same responsibilities and duties that he previously held. That a few job assignments and trainings were shifted away from him does not establish that he was retaliated against.

As noted above, Plaintiff complained that he was doing 2.5 FTE jobs. Plaintiff requested assistance with his workload. Plaintiff should not be allowed to now argue that he was constructively discharged after Mayor England did exactly what Plaintiff was asking and reduced his workload. Allowing such a claim to proceed forward would create a catch 22 for all employers. If an employee felt they were being overworked they could ask for a reduction in their job duties. If the employer ignored the request, the employer could claim constructive discharge for being overworked. On the other hand, if the employer listened, as happened in this

case, the employee could claim that they were constructively discharged when their duties were removed. Plaintiff simply wants to have his cake and eat it too. The Court should reject this argument.

Finally, contrary to Plaintiff's assertion, Defendants did address the issue of causation in their memorandum. (Dkt. 19-1, p. 20). Defendants correctly asserted that Plaintiff testified that he believed that his support of Heiner in the 2021 mayoral election was the reason that Mayor England allegedly asked him to resign, not his demands for a city administrator. While the request to resign cannot constitute an adverse employment action as Mayor England did not have the authority to terminate Plaintiff's employment, even assuming that the request could be used as an adverse employment action, it was not tied to the alleged report of waste.

In opposition to summary judgment, Plaintiff argues, unconvincingly, that his advocacy of a City Administrator should be construed as the report of a waste of public funds. In addition to this argument being directly contradicted by Plaintiff's own deposition (Burch Depo. 174:21–175:13), this argument also shows the lack of causation. Plaintiff cannot simultaneously argue that Mayor England asked him to resign for supporting the Mayor's political opponent then also claim that he was asked to resign for advocating for a City Administrator. Because Plaintiff has contradicted himself multiple times in this case, he cannot show a causal connection between an alleged adverse employment action and a protected activity under IPPEA, and the claim should be dismissed with prejudice.

## **CONCLUSION**

Based on the foregoing, Defendants Kevin B. England and City of Chubbuck respectfully request that this Court grant summary judgment in their favor, and that Plaintiff's Complaint be dismissed in its entirety.

DATED this 19th day of January 2024.

_____
SAM L. ANGELL

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing document upon the following on January 19, 2024, by the method indicated below:

DeAnne Casperson, Esq.                              [X] ECF
Amanda Ulrich, Esq.
Ryan S. Dustin, Esq.
CASPERSON ULRICH DUSTIN
356 W Sunnyside Road, Ste B
Idaho Falls, ID 83402
Email: dcasperson@workandwage.com
Email: aulrich@workandwage.com
Email: rdustin@workandwage.com

  /S/ _____
SAM L. ANGELL